UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPHUS RUTLEDGE, *et al.*, | CASE NO. 4:14CV12 |
| Plaintiffs, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NILES EXPANDED METALS, *et al.,* | <u>MEMORANDUM OPINION AND ORDER</u> |
| Defendants. | |

This matter is before the undersigned on a motion for summary judgment filed by Defendants Niles Expanded Metals, Bill Phillips, Jr., and Ian Thompson ("Defendants") on May 13, 2015.  ECF Dkt. #57.  In the motion for summary judgment, Defendants allege that no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law on the retaliation claim filed by Plaintiff Kenneth C. Wright, III ("Plaintiff").  Plaintiff filed a response to Defendants' motion for summary judgment on July 31, 2015.  ECF Dkt. # 71. Defendant filed a reply in support of their motion for summary judgment on August 14, 2015.  ECF Dkt. #80.  Also addressed in the instant Opinion and Order is Defendants' motion to strike the affidavit of Plaintiff.  ECF Dkt. #75.

For the following reasons, Defendants' motion to strike the affidavit of Plaintiff is GRANTED and Defendants' motion for summary judgment is GRANTED.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was hired for the position of laborer by Niles Expanded Metals ("NEM") in June 2007.  ECF Dkt. #71 at 9.  Plaintiff's employment was governed by a collective bargaining agreement containing an arbitration clause, suspension and discharge procedures, and seniority clauses applying to promotions, layoffs, and job vacancies.  *Id.* at 11-12.  NEM utilized a progressive discipline system that increased the penalty for each subsequent violation of NEM's policies.  *Id.* at 12.

On at least two instances each year during the period of 2007 through 2009, Plaintiff provided to his superiors copies of the resume of Josephus Rutledge, a friend of Plaintiff who is African American. ECF Dkt. #71 at 12-14. Mr. Rutledge was never interviewed for employment by NEM. *Id.* at 15. At some point during Plaintiff's employment, a discriminatory note was placed in Plaintiff's locker by an unknown individual. ECF Dkt. #71-1 at 4-5. Plaintiff believed that the note was placed in his locker as a result of his advocacy in support of NEM hiring more minority employees. ECF Dkt. #59-1 at 125-126.

Plaintiff was subject to numerous disciplinary procedures during his employment at NEM. ECF Dkt. #57 at 11-13; #71 at 17-19. Plaintiff was suspended for excessive absenteeism in August 2009. ECF Dkt. #57 at 11. On September 21, 2010, Plaintiff violated NEM's policy requiring laborers to wear safety glasses. *Id.* at 12. On March 23, 2011, Plaintiff was suspended for five days for smoking inside NEM's facility in violation of NEM's policy against smoking. *Id.* at 13; ECF Dkt. #71 at 18. Violations of NEM's non-smoking policy are punishable by termination. ECF Dkt. #57 at 14. On July 1, 2011, Plaintiff was again cited for failure to wear safety glasses while on the factory floor. *Id.* at 13; ECF Dkt #71 at 17. NEM also determined that Plaintiff failed to obey a direct order from his supervisor when asked to equip his safety glasses during the July 1, 2011 incident. ECF Dkt. #57 at 14.

On July 6, 2011, Ian Thompson, NEM's director of operations, sent Plaintiff a letter terminating his employment based on the July 1, 2011 incident. ECF Dkt. #57-5 at 7. Also on July 6, 2011, Mr. Thompson, after learning that Plaintiff was on leave from work and could not be terminated until he returned to work per the terms of the Union agreement, sent a second letter indicating that the termination decision will be implemented on the date that Plaintiff returned to work. *Id.* at 8. Plaintiff filed a Union grievance in response. ECF Dkt. # 59-1 at 103.

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against NEM on July 25, 2011. ECF Dkt. #57-9. On August 11, 2011, NEM held a meeting for employees, and the pending EEOC charge was discussed. ECF Dkt. #57 at 15; ECF Dkt. #71 at 19-21.

On August 17, 2011, NEM immediately terminated Plaintiff's employment for lying on his employment application.  ECF Dkt. #57 at 15; ECF Dkt. #71 at 21.  Plaintiff filed a grievance the following day.  *Id.*  On August 25, 2011, Plaintiff's Union withdrew Plaintiff's grievance.  ECF Dkt. #57 at 16; ECF Dkt. #71 at 22.

On January 3, 2014 Plaintiff filed the instant case claiming retaliation under Title VII of the Civil Rights Act of 1964 and R.C. § 4112.02.

## II.    STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim.  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on

allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 252.

### III. LAW AND ANALYSIS

#### A. DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT

On August 6, 2015, Defendants filed a motion to strike the affidavit of Plaintiff. ECF Dkt. # 75. In the motion to strike, Defendants contend that Plaintiff's affidavit contradicts his testimony, is an attempt to circumvent Plaintiff's deposition testimony because it is dispositive of his claims, and that Plaintiff's affidavit is rife with statements that fail to create triable issues because they are vague, conclusory, and void of facts. *Id.* Plaintiff filed a response to Defendants' motion to strike on August 18, 2015. ECF Dkt. #82. It is necessary to first determine the validity of Defendants' arguments surrounding Plaintiff's affidavit because the

affidavit testimony is used as the sole evidence to support key components of Plaintiff's allegations.

Defendants have essentially asserted that Plaintiff's affidavit is a sham affidavit. *See* ECF Dkt. #75. The sham affidavit rule is well established in the Sixth Circuit, and states that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986). "The rule 'is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on the issue by the same party indicates that no such dispute exists.'" *McClain v. Mason County, Ky.,* No. 14-5983, 2015 WL 3824957, at * 4 (6th Cir. 2015) (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 907 (6th Cir. 2006)). Under the sham affidavit rule, a post-deposition affidavit may be properly stricken by the district court for two reasons: (1) if the affidavit directly contradicts the affiant's prior deposition testimony, the affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction; or (2) when there is no direct contradiction, the district court should not strike or disregard the affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue. *McClain*, 2015 WL 3824957 at *4 (citing *Aerel,* 448 F.3d at 908-09). When determining whether such an affidavit is an attempt to create a sham fact issue, courts consider whether the affiant was cross-examined during earlier testimony, whether the affiant has access to pertinent evidence at the time of the earlier testimony, and whether the earlier testimony reflects confusion that the affiant later attempts to explain. *Id.*

The Court notes that Plaintiff's affidavit could be stricken under either analysis required by the sham affidavit rule, but, in the instant case, a lengthy analysis determining whether Plaintiff's affidavit is an attempt to create a sham fact issue is not required because Plaintiff's affidavit directly contradicts the affiant's prior deposition testimony and Plaintiff has not provided a persuasive justification for the contradiction. No where in Plaintiff's deposition does he indicate that he told his supervisors that Mr. Rutledge was African American or that Plaintiff felt that NEM should hire more minority employees. *See* ECF Dkt. #57-4. Plaintiff indicates briefly that he was internally concerned with the racial composition of NEM's workforce, but

-5-

there is no showing that Plaintiff passed these concerns along to his supervisors. *Id.*  Rather, Plaintiff's deposition clearly states that he simply handed resumes out to higher ranking employees of NEM, and told them that Mr. Rutledge was a "good guy" and a "good worker."  *Id.*  Further, Plaintiff expressly indicated that he did not further pursue assisting Mr. Rutledge with seeking employment beyond passing out the resumes at NEM.  *Id.*

In stark contrast to Plaintiff's deposition testimony, Plaintiff's affidavit claims that Plaintiff discussed the lack of minorities working at NEM with each superior every time he distributed a resume, continuously inquired about Mr. Rutledge's employment from 2007 until he was terminated in 2011, was especially vocal about the lack of minorities employed at NEM, and consistently made his feeling known to employees and management.  ECF Dkt. #71-1 at 1-2.  Plaintiff's affidavit directly contradicts his prior deposition testimony.  Plaintiff is not entitled to create disputed issues of material fact where Plaintiff's earlier testimony indicates that no such dispute exists after the Defendants' have laid bare their arguments in a motion for summary judgment.  Whether Plaintiff discussed the lack of minorities at NEM with his superiors, and Plaintiff's veracity in pursuing the employment of minorities at NEM are material facts in the instant case.  Since Plaintiff's affidavit creates newly disputed issues of material fact that contradict his prior deposition testimony, Plaintiff's affidavit is stricken from the record and will not be considered herein.  Accordingly, the portions of Plaintiff's response to Defendants' motion for summary judgment that rely, in their entirety, on Plaintiff's affidavit will only be considered insofar as they collaborate Plaintiff's deposition testimony.

Plaintiff argues that his affidavit does not contradict his deposition testimony by claiming that Defendants failed to ask Plaintiff questions that would have elicited answers indicating that Plaintiff engaged in protected activity.  *See* ECF Dkt. #82.  Plaintiff also provides passages from his deposition in an attempt to show Plaintiff was concerned about the lack of minorities employed at NEM.  The passages provided by Plaintiff in no way indicate that Plaintiff communicated any concerns about minority employment to anyone at NEM.  *Id.*  Rather, the passages highlight a comment made to Plaintiff by Mr. Desavigny, Plaintiff's current beliefs

-6-

about NEM's hiring practices, and Plaintiff's personal opinion that NEM had an animous towards African Americans. *Id.*

Further, Defendants provided clear examples of instances in which Plaintiff's affidavit contradicts his deposition. For example, Plaintiff, in his deposition, states:

> Q: Just "[h]ere's a resume of a guy I know. He is a good guy?"
>
> A: Yeah.
>
> ...
>
> Q: What were the circumstances approaching Tim Gilliam?
>
> A: Same as Mr. DeGraw. This guy I know is a good worker, he knows presses, he knows how to run a shear. And other than that, I got the same thing. He would pass it on to human resources.
>
> ...
>
> Q: Am I understanding you correctly it was pretty much the same as with DeGraw? You gave him the resume, told him the guy was a good guy, and he said he would pass it on?
>
> A: Right.
>
> ...
>
> Q: It was just the resume that you gave her?
>
> A: Yes.
>
> Q: Dis you have any additional discussion with Heather after that time when you stopped in to give her the resume?
>
> A: No, I did not.

ECF Dkt. #59-1 at 44-50. The above answers clearly contradict Plaintiff's affidavit. For example, Plaintiff's affidavit contains the following passages:

> Each time I would give someone a resume as well as during many conversations with co-workers and management, I always pointed out the lack of minorities working at NEM and emphasized the qualifications of Rutledge.
>
> ...
>
> I was both vocal and persistent about Rutledge and the lack of minorities throughout my employment.
>
> ...

-7-

> When I failed to hear from those individuals, I would inquire about the status of my friend's application. I did this repeatedly up until the time I was fired.

ECF Dkt. #71-1. Plaintiff's deposition and affidavit are in clear conflict regarding his statements to superiors about hiring minority employees. Plaintiff has failed to provide a persuasive justification for the contradiction.

Accordingly, Defendant's motion to strike the affidavit of Plaintiff is granted.

### B.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, Defendants argue: (1) Plaintiff cannot establish a prima facie case of retaliation; (2) that Plaintiff did not engage in protected activity; (3) no causal connection exists, for purposes of proving a retaliation claim, when there is a two-year lapse of time between the allegedly protected activity and the adverse employment action; and (4) Defendants had a legitimate, non-retaliatory reason for terminating Plaintiff's employment. ECF Dkt. #57. Each of these arguments will be addressed in turn.

#### i.    PRIMA FACIE CASE OF RETALIATION

To establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in protected activity under Title VII of the Civil Rights Act or R.C. § 4112.02; (2) the exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066, *cert. denied,* 498 U.S. 984 (1990)). Defendants argue that Plaintiff cannot establish the third and fourth elements of his retaliation claim.

Defendants contend that the decision to fire Plaintiff was made three weeks prior to Plaintiff's alleged protected activity, namely, the filing of the EEOC charge, and thus the decision to terminate Plaintiff could not be in retaliation to the filing of the charge. ECF Dkt. #57 at 18. In support of this position, Defendants cite the July 6, 2011 letters informing Plaintiff that he was terminated, and then, after a meeting with union representatives where it was learned that Plaintiff could not be fired while on leave,  informing Plaintiff that his termination was to be

-8-

effective when he returned to work. *Id.* Further, Defendants argue that the August 17, 2011 termination for falsification of Plaintiff's employment application does not alter the analysis because Plaintiff had already been fired. Plaintiff contends that his advocacy in support of hiring minorities continued throughout his employment, up to the date of termination, and constitutes protected activity that occurred prior to any termination event. Plaintiff further contends that the August 11, 2011 meeting was an act of retaliation, that Plaintiff was not terminated until August 17, 2011, and that Plaintiff did not lie on his employment application. ECF Dkt. #71 at 26-29.

Defendants' arguments are compelling. Plaintiff had been effectively terminated on July 6, 2011. Even the second July 6, 2011 letter informed Plaintiff that he was terminated pending the end of his leave. Plaintiff had no reason to believe that he could return to work once his leave was over. Plaintiff argues that if he was no longer an employee following the July 6, 2011 letters, NEM had no reason to subsequently notify Plaintiff that he was being terminated on August 17, 2011. ECF Dkt. #71 at 29-30. However, the August 17, 2011 termination merely accelerated the date at which Plaintiff's inevitable termination occurred. Plaintiff's termination was fully vested following the July 6, 2011 letters. Plaintiff had already been terminated, and learned that he had been terminated, prior to filing the EEOC charge. Defendant simply accelerated the date at which Plaintiff's termination became effective.

Defendants cite to Sixth Circuit case law that supports their contention. In *Reynolds v. Extendicare Health Servs., Inc.,* 257 Fed. App'x 914, 920 (6th Cir. 2007) (citing *Clark County School Dist. v. Breeden,* 532 U.S. 268 (2001)), the Sixth Circuit held that it was not appropriate to view placing the plaintiff on a performance improvement plan as being causally related to the plaintiff filing an EEOC complaint because the decision to place the plaintiff on the plan had been made prior to the protected activity. In the instant case, like in *Reynolds*, the decision to fire Plaintiff had been made prior to Plaintiff's EEOC charge. This Court, although in the context of the Family Medical Leave Act, has held that if defendants succeed in showing that a decision to terminate occurred before the protected activity, the execution of the decision is not evidence of causality. *Muhammed-Smith v. Psychiatric Solutions, Inc.,* 877 F. Supp.2d 552, 558 (N.D. Ohio 2012). The logic employed by the Court in *Muhammed-Smith* also applies in the instant case.

Plaintiff was terminated before he filed the EEOC charge, and thus Defendants' decision to terminate Plaintiff's employment could not have been retaliatory.

Plaintiff also claims that the August 11, 2011 meeting was retaliatory. However, Plaintiff also admits that he was not required to attend the August 11, 2011 meeting. ECF Dkt. #71 at 20. Plaintiff makes no argument as to how the August 11, 2011 meeting, which Plaintiff was not required to attend and prior to which Plaintiff had been fired, constitutes negative employment action or retaliation. Further, Defendant contends that the questions posed at the meeting spawning discussion of Plaintiff's EEOC charge were posited by the employees of NEM, not NEM itself. ECF Dkt. #57 at 15. Plaintiff does not refute this assertion and provides no argument as to why the meeting was retaliatory beyond merely asking the Court to determine that the meeting was in retaliation to Plaintiff's EEOC charge. Plaintiff has not met his burden of demonstrating that the August 11, 2011 meeting was in retaliation for Plaintiff's protected activity.

### ii.     PROTECTED ACTIVITY

Even if Plaintiff could establish a prima facie case for retaliation, Plaintiff's claims fail on other grounds. Defendants argue that Plaintiff's attempts to have Mr. Rutledge hired by NEM do not constitute protected activity. ECF Dkt. #57 at 19. Continuing, Defendants argue that Plaintiff described Mr. Rutledge as a "good worker" and "dependable," and did not make any statements regarding Mr. Rutledge's race or the lack of minorities employed by NEM. *Id.* at 23. Defendants also argue that Plaintiff's employment was terminated due to his record of poor conduct. *Id.* Plaintiff maintains the position that he was terminated for speaking out against NEM's hiring practices. ECF Dkt. #71.

From a review of the record, the vast majority of the evidence suggests that Plaintiff did not mention concerns about hiring minorities to his supervisors, did not veraciously advocate for the hiring of minorities, and even assuming Plaintiff did advocate for the hiring of minorities, that his advocacy was not continuous until the date that he was terminated. Most telling is Plaintiff's own deposition testimony, which does not provide evidence suggesting that Plaintiff engaged in protected activity. Further, Plaintiff's response to Defendants' motion for summary judgment

-10-

relies on the affidavit of Benjamin Edwards, Plaintiff's Union representative, and Plaintiff's own affidavit, the latter of which has been stricken from the record. The only relevant mention that Mr. Edward's affidavit makes regarding Plaintiff's advocacy is that he had heard from co-workers about Plaintiff's complaints and that Plaintiff was especially vocal at grievance meeting with management officials. ECF Dkt. #71-4 at 2. Throughout the entire record, only these two paragraphs in Mr. Edward's affidavit suggest that Plaintiff engaged in any advocacy in an attempt to convince NEM to hire minority employees.

Further, Plaintiff's record of poor behavior at work strongly supports Defendants' argument that Plaintiff was terminated as a direct result of the second instance of Plaintiff failing to wear safety glass and the subsequent failure to obey the orders of his supervisor, rather than his advocacy for NEM to hire minority employees. The record demonstrates (as discussed below) that Plaintiff was given multiple chances to reform his behavior, yet continued to choose to break the rules put in place by his employer.

For the above reasons, Plaintiff has not established that he engaged in protected activity.

### iii. CAUSAL CONNECTION

Defendants argue that a two-year delay between the alleged protected activity and termination does not demonstrate a causal connection as a matter of law. ECF Dkt. #57 at 24. Continuing, Defendants also argue that NEM's decision not to fire Plaintiff after he committed a terminable offense negates any causal connection. *Id.*

In *Breeden*, the Supreme Court of the United States held that negative employment action taken twenty months following the protected activity suggests, by itself, no causality at all. *Breeden*, 532 U.S. at 274. Plaintiff claims to have last distributed resumes in 2009. As discussed above, the evidence on record indicates that Plaintiff's alleged advocacy did not continue, assuming it occurred at all, beyond the period during which Plaintiff distributed Mr. Rutledge's resumes. Plaintiff's termination did not occur until July 2011, a length of time likely longer than twenty months. Accordingly, this length of time suggests that Plaintiff's termination was not causally connected to Plaintiff's alleged protected activity.

-11-

Defendants also argue that NEM's decision not to fire Plaintiff following the smoking incident (which is punishable by termination) negates any causal connection. ECF Dkt. #57 at 24. While NEM's decision not to fire Plaintiff does tend to suggest that NEM was not seeking a reason to terminate Plaintiff, Defendants do not cite any case law in support of this assertion. However, based on the Supreme Court's ruling in *Breeden*, the duration of time that passed between Plaintiff's alleged protected activity and his termination creates a presumption that Plaintiff's termination was not causally connected to the alleged protected activity.

Finally, Defendants argue that Mr. Edwards took the same actions as Plaintiff regarding advocacy in support of hiring minorities, that Mr. Edwards was not fired for his conduct, and that this supports Defendants' assertion that NEM did not fire Plaintiff for the alleged protected activity. ECF Dkt. #57 at 25. Plaintiff does not offer any response to this assertion made by Defendants. The Court agrees that the fact that Mr. Edwards was not fired for behavior similar to Plaintiff, as detailed in Mr. Edward's affidavit, supports Defendants' assertion that Plaintiff was not fired for engaging in alleged protected activity.

Plaintiff argues that his protected activity was continuous up until the point he was fired. However, as discussed above, the record does not support Plaintiff's assertions on this matter. Accordingly, Defendants' arguments that Plaintiff's termination was not causally connected to the alleged protected activity are well taken.

### iv.   NON-RETALIATORY REASONS FOR TERMINATION

Defendant next argues that, even if Plaintiff can establish a prima facie case of retaliation, Plaintiff violated numerous rules put in place by NEM, and these violations establish a legitimate, non-pretextual, non-retaliatory reason for terminating Plaintiff's employment. ECF Dkt. #57 at 25. Defendant cites to five violations of NEM's policies committed by Plaintiff over the period of September 2010 to July 6, 2011, the date of Plaintiff's termination. *Id.* at 26. The violations include working without safety glasses, absenteeism, a second instance of absenteeism, a warning for poor performance issues, a warning for smoking inside NEM's facility (in lieu of termination), and a second instance of working without safety glasses. *Id.* Plaintiff does not

deny that he violated NEM's policies. Further Defendant points to Plaintiff's habit of taking six-month leaves of absence to avoid punishment for violating NEM's policies. *Id.*

Plaintiff spends a large portion of the statement of the facts section of his brief arguing that Plaintiff's behavior resulted in disproportionately harsh treatment from NEM. ECF Dkt. #71 at 17-21. Plaintiff cites only one employee in the discussion of the harshness of NEM's treatment towards Plaintiff. The employee used as an example by Plaintiff was also fired by NEM. ECF Dkt. #57-5. Plaintiff argues that the cited employee was fired after eight offenses, and that Plaintiff was improperly fired after a lesser number of offenses (the number of documented offenses appears to be six). ECF Dkt. #71 at 18-19. Plaintiff's arguments are not compelling. The record, as discussed above, shows that Plaintiff received multiple warning from supervisors and NEM management regarding his violations of NEM's policies, yet continued to violate those policies. The fact that a single employee was treated slightly different under NEM's progressive discipline policy does not automatically grant Plaintiff the right to the exact same treatment. In the Sixth Circuit "[c]ourts are not intended to act as 'super personnel departments to second guess an employer's facially legitimate business decisions.'" *Adams v. Tenn. Dep't of Fin. and Admin.*, 179 Fed. App'x 266, 272 (6th Cir. 2006) (quoting *Bush v. Honda Motor Co.*, 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002) (internal citations omitted)).

The Court finds that Plaintiff's history of repeatedly violating the rules, his termination as a direct result of the second instance of refusing to wear safety glasses and refusing to obey directions from his supervisor, and the fact that Mr. Edwards was not terminated despite engaging in alleged protected activity that was similar to Plaintiff's actions support the conclusion that Defendants terminated Plaintiff's employment for legitimate, non-retaliatory reasons, and that Defendants' reasons for terminating Plaintiff were not pretextual. Accordingly, the Court finds that Plaintiff's retaliation claim fails on all grounds.

**IV.    CONCLUSION**

For the foregoing reasons the Court grants Defendants' motion to strike the affidavit of Plaintiff (ECF Dkt. #75) and grants Defendants' motion for summary judgment (ECF Dkt. #57).

IT IS SO ORDERED.


Date: August 20, 2015                              */s/ George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE